UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEWEY PLUMB,

    Plaintiff,

v.

UNKNOWN COLLIER, *et al.*,

    Defendants.
_____/

Case No. 1:24-cv-664

Hon. Paul L. Maloney

## REPORT AND RECOMMENDATION

This is a *pro se* civil rights action brought pursuant to 42 U.S.C. § 1983 by plaintiff Dewey Plumb, a prisoner in the custody of the Michigan Department of Corrections (MDOC). The incident occurred at the MDOC's Bellamy Creek Correctional Facility (IBC). All defendants have been dismissed except for plaintiff's Eighth Amendment excessive force claim against Corrections Officer (CO) Trevor Collier. *See* Opinion (ECF No. 12, PageID.42-43). This matter is now before the Court on defendant Collier's Motion for summary judgment on the basis of exhaustion (ECF No. 21).

    **I.**    **Background**

The Court summarized the relevant portions of plaintiff's complaint as follows:

> In Plaintiff's amended complaint, he alleges that on December 11, 2022, he "was in a[n] altercation with another inmate." (*Id.*) Plaintiff contends that "[Defendant] Collier did not say get down or stop fighting or taser taser taser like he should have," and Collier "stood 4 or 5 feet away from [Plaintiff] and pointed [the taser] at [Plaintiff's] face and shot [Plaintiff] direct in the face." (*Id.*) Thereafter, while Plaintiff was being transported to segregation, Defendant Bagley "stepped on the taser cord that was dangling off [of Plaintiff's] face and they were laughing at [Plaintiff]." (*Id.*)

1

> Subsequently, "medical ripped the taser prongs out of [Plaintiff's] face," and Plaintiff "lost [his] eyesight in [his] right eye for 6 to 8 months and [he] still ha[s] a . . . blur spot that stays in the middle of [his] eyesight and it causes [him] to have constant migraines all the time." (*Id.*) "[I]t [also] started to affect [Plaintiff's] hearing and now [he] ha[s] to wear hearing aids." (*Id.*)
>
> "[E]very time [Plaintiff] put[s] in grievances they throw them away." (*Id.*) Additionally, "they put [Plaintiff] back in the same unit with [Defendant] Collier," and Collier and other unnamed correctional officers "laughed and made fun of [Plaintiff] for months after [the incident]." (*Id.*) Plaintiff contends that the Warden and ADW "should have made sure all of the [correctional officers] were trained good [sic] with their taser before they were able to carry them." (*Id.*)
>
> Based on the foregoing allegations, Plaintiff avers that Defendants violated his rights under the Eighth Amendment. (*Id.*, PageID.19.) As relief, Plaintiff seeks monetary damages. (*Id.*)

Opinion at PageID.33-34 (footnote omitted).  As discussed, the Court dismissed all claims except for plaintiff's Eighth Amendment excessive force claim against defendant Collier.

## II.    Summary Judgment

### A.    Legal standard

Defendant Collier has moved for summary judgment for lack of exhaustion. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B.    Lack of Exhaustion

#### 1.    Exhaustion requirement

The Prison Litigation Reform Act (PLRA) provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007).

In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural

rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

### 2.     MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* MDOC Policy Directive ("PD") 03.02.130 (effective March 18, 2019). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ Q and S. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ S (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ W. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ DD. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ HH.

### 3.     Discussion

CO Collier points out that plaintiff has not exhausted the Eighth Amendment claim at issue in this lawsuit. Specifically, plaintiff has not pursued *any* Step III grievances. *See* MDOC Prisoner Step III Grievance Report (ECF No. 22-3).

In this response, plaintiff states that he filed a grievance identified only as "IBC/ / /". Plaintiff's Response (ECF No. 25, PageID.98). Plaintiff also makes a vague statement suggesting that an unknown person interfered with his ability to file grievances (in his words):

> In the petitioners civil suit, although improperly, raises claim that a, john doe, classified as "they" by the magistrates opinion was preventing the petitioners ability to fulfill PLRA as a retaliatory conduct towards petitioner.

*Id*. Plaintiff did not provide any evidence to support this claim that he was prevented from filing or exhausting grievances.

In his reply, CO Collier points out that plaintiff filed a grievance at IBC but did not exhaust the grievance through Step III. This grievance, IBC-23-01-0100-28E ("100"), listed the incident date of December 11, 2022, and referred to CO Collier deploying a taser on that date. Grievance 100 (ECF No. 26-1, PageID.116). The grievance, which was not received until January 12, 2023, was rejected at Step I as untimely. PageID.117. In addition, the grievance was denied at Step I, which indicates that the MDOC addressed the merits of the grievance. *Id*. Plaintiff appealed the rejection and denial to Step II where it was denied on January 30, 2023. PageID.114-115. However, plaintiff did not appeal the grievance to Step III. PageID.114. *See* PD 03.02.130 ¶ HH (stating in part that, "A grievant may file a Step III grievance if s/he is dissatisfied with the Step II response or does not receive a timely response.").

Based on this record, plaintiff did not properly exhaust a grievance to support his claim against defendant CO Collier. *Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. Accordingly, defendant Collier's motion for summary judgment should be granted.

### III.     Recommendation

For these reasons, I respectfully recommend that defendant CO Collier's motion for summary judgment on the basis of exhaustion (ECF No. 21) be **GRANTED** and that this action be **DISMISSED**.

Dated:  July 14, 2025                                           /s/ Ray Kent
                                                                RAY KENT
                                                                United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).